Marguerite Matthews, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 1, 1982, before Judges CRAIG, MAC-PHAIL and DOYLE, sitting as a panel of three.

*David Gates,* for petitioner.

*Douglas Block,* Counsel, with him *Stanley Slipakoff,* Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, April 21, 1982:

Marguerite Matthews appeals the final order of the Pennsylvania Department of Public Welfare (department) affirming a hearing examiner's order denying Matthews' appeal from the decision of the Bucks County Board of Assistance (county office) to reduce the level of the patient's nursing care benefits under the Medical Assistance program.

The patient, a double amputee with bilateral below-the-knee amputations, has been treated at Centennial

Springs Health Care Center (Centennial), a skilled nursing care facility, where she receives physical therapy.

In June, 1980, Centennial's utilization review committee (URC) submitted a one-page utilization review form to the county office, recommending a lower level of care for the patient. The block captioned "Utilization Review Committee Comments and Recommendations" reads:

> The Utilization Review Committee and the attending physician recommend a change in the level of care of Marguerite Matthews. Patient admitted from home 7/12/79 with diagnosis of bilateral B/K [below the knee] amputation, Chronic Obstructive Pulmonary Disease, Occlusive Vascular Disease. Receiving therapy four time a week, is able to ambulate with maximum assist with prosthesis and walker. Is independent in transfers and wheel chair. Is alert, oriented. Minimal assist with bathing. Medically stable.

In the square next to the words "Recommendation Discussed With Attending Physician," the word "YES" was inserted.

On August 19, 1980, the county office's medical review team considered the utilization review form and recommended that the level of care be changed from skilled to intermediate, effective September 1, 1980.

On appeal, the hearing examiner found that Centennial's records show that on May 16 and July 11, 1980,[1] Dr. Miller certified that the patient needed skilled care, and that on August 1, 1980, Dr. Miller

---

[1] The record shows that Dr. Miller also certified that Matthews needed skilled care on September 5, 1980. However, the hearing examiner made no finding as to this certification and apparently regarded the September certification as irrelevant.

filled in a physician's evaluation form (in the record) certifying that skilled nursing facility care was necessary. The record also contains a written statement of Dr. Miller,[2] stating that he did not participate in the URC's recommendation and that he does not recall being consulted about a change in the patient's care.

The hearing examiner denied the appeal because she determined that the county office followed the procedural steps required by the department's regulations[3] and that the county office's decision was proper, based solely upon the information shown on the utilization review form. Lacking proof that the county office received Dr. Miller's denial of consultation with the URC, the hearing examiner disregarded that item.

Although the hearing examiner found that Dr. Miller ordered physical therapy for the patient, she decided that the patient is not entitled to continued care in a skilled care facility.

We must decide if the hearing examiner erred by concluding that a patient needing physical therapy, *of the sort here required,* is not entitled to treatment in a skilled nursing facility.

The hearing examiner's decision acknowledges that the services or benefits in a skilled care facility "may include" physical therapy. Section 9424.31 of the Medical Assistance Manual (MA manual). Also, the hearing examiner found that the patient needs physical

---

[2] The hearing examiner held the record open so that Matthews could submit Dr. Miller's statement. The hearing examiner may keep the record open for additional exhibits for five days, 55 Pa. Code §275.4(h),(2),(iii). Dr. Miller's statement was submitted to the hearing examiner within the five day period. The department's counsel did not object to Dr. Miller's statement.

[3] Section 9424.5324 of the department's Medical Assistance Manual states that the county office will (1) evaluate the URC's utilization review form, (2) determine an appropriate course of action, and (3) notify the facility (Centennial) no later than seventy two hours following receipt of the utilization review form.

therapy as part of a maintenance program, which is within the federal definition of skilled care. 42 CFR §405.127(c)(3).

Finding no conflict between MA manual §9424.31 and 42 CFR §405.127(c)(3), we conclude that the therapy needed here constitutes a skilled care service, but the question still is whether the patient is entitled to receive that therapy in a skilled care *facility*.

The statutory definition of "skilled nursing facility services," found at 42 USC §1396d(f), provides in pertinent part:

[T]he term 'skilled nursing facility services' means services which are or were required to be given an individual who needs or needed on a daily basis skilled nursing care (provided directly by or requiring the supervision of skilled nursing personnel) or other skilled rehabilitation services which as a practical matter can only be provided in a skilled nursing facility on an inpatient basis.

Thus, for a patient who needs "skilled care," as defined by 42 CFR 405.127(c)(3), to be eligible for care in a skilled nursing facility, the care must also be:

(1) needed by the patient on a 'daily basis,' and

(2) available, as a practical matter, only in a skilled nursing facility on an inpatient basis.

The statutory requirement that a patient must need skilled rehabilitation services on a "daily basis" to qualify for care in a skilled care nursing facility is interpreted by 42 CFR §405.128, which provides in part:

Skilled nursing services or skilled rehabilitation services must be required and provided on a daily basis. If skilled rehabilitation services are not available on a 7-day-a-week basis, a patient whose inpatient stay is based solely on the need for skilled rehabilitation services would meet

the 'daily basis' requirement where he needs and receives such services *on at least 5 days a week.* The requirements that skilled rehabilitation services be required on a daily basis should not be applied so strictly that it would not be met merely because there is a break of a day or two during which no skilled rehabilitation services are furnished and discharge from the facility would not be practical. (Emphasis supplied.)

Where, as here, the party with the burden below does not prevail, and the sufficiency of the evidence is challenged on appeal, the question we must decide is whether the factfinder capriciously disregarded competent evidence.[4] Capricious disregard of the evidence exists when a factfinder deliberately ignores evidence which a reasonable person would consider important. *Kania v. Department of Public Welfare,* 49 Pa. Commonwealth Ct. 136, 410 A.2d 939 (1980).

The hearing examiner's conclusion, that the patient does not need physical therapy on a daily basis, is contrary to the only competent medical opinion,[5] the at-

---

[4] Even though the department's counsel argues that this case involves only the issue of whether there is substantial evidence to support the hearing examiner's findings, the hearing transcripts are not available and there is no stipulation of facts in the record. Except for information supplied at oral argument, we would not be able to decide this case. In response to our questions, the department's counsel advised us that the evidence supporting the hearing examiner's findings is the information shown on the URC's utilization review form.

[5] The utilization review form, dated June 26, 1980, indicates that Matthews was receiving therapy four times a week. However, Centennial's own records show that Matthews received physical therapy five days per week during three of the four weeks in June, and that following June 26, during five weeks Matthews received therapy on five days, during six weeks, one of which included the fourth of July weekend, Matthews received therapy on four days, and during two weeks Matthews received therapy less than four days.

tending physician's statement that, from July 1979 through September 1980, the patient needed physical therapy five days a week, which constitutes a "daily" need under 42 CFR §405.128, warranting a skilled nursing facility under 42 §1396d(f). The hearing examiner ignored that statement of Dr. Miller only because it was not before the county office when the county office made its decision.

The hearing examiner also ignored Dr. Miller's statement giving his opinion that, as a practical matter, the care needed by this patient is only available in a skilled nursing care facility.

Under the regulations,[6] the hearing examiner should have considered all the facts in evidence at the hearing, not just evidence before the county office; the issue at the departmental hearing should not have been limited to whether the county office acted properly on

---

[6] The responsibilities of the hearing officer presiding at a medical assistance appeal are listed at 55 Pa. Code §275.4(f), which provides in part:

. . . .

(2) To obtain . . . all relevant testimony . . .

(3) To provide the appellant . . . with the opportunity to . . . advance any pertinent fact or argument.

. . . .

(6) To render a decision based upon the facts and evidence as applied to Departmental regulations.

The rules for hearing decisions, at 55 Pa. Code §275.4(h)(1), provide in part:

(iii) The function of the hearing officer in rendering a hearing decision will be as follows:

(A) To determine the facts.

(B) To determine the appropriate regulations that apply.

(C) To determine the action that should be taken in relation to the established facts and correct application of departmental regulations.

The regulations, at 55 Pa. Code §275.4(h)(2), provide in part:

(2) *Basis for hearing decision.* Hearing decisions will be based on the following:

the facts before it. We must therefore decide that the hearing examiner capriciously disregarded competent evidence.

Accordingly, we reverse the department's order.

### ORDER

Now, April 21, 1982, the order of the Department of Public Welfare dated December 18, 1980, denying Marguerite Matthews' appeal from a decision to change her level of care from skilled to intermediate, is hereby reversed.

This decision was reached prior to the resignation of Judge MENCER.

---

(i) The hearing officer will restrict his decision to the hearing record, which will consist of testimony and exhibits introduced into the hearing and the notice of action taken by the agency and the appeal of the client. The hearing officer will make his adjudication in accordance with regulations. . . .